Let's just wait a minute for everybody to leave the room. Okay. Ms. Shapiro. Thank you, Your Honor. Good afternoon, and may it please the Court. My name is Alexandra Shapiro, and I represent Appellant Nathaniel Chastain. The Supreme Court has limited mail-and-wire fraud to schemes to obtain things,  "'long recognized as property' when the statutes were enacted." The Court has reaffirmed that limitation over and over from McNally to last year's Simonelli decision. This prosecution violates the Court's core teachings on the meaning of the term property. The alleged object of the scheme, Mr. Chastain's ideas about what to feature on his company's home page, is not something long recognized as property. Well, that begs the question, right, because confidential business information has been recognized as property, right? Well, Your Honor — And the question at trial was whether this was confidential business information. Maybe the jury was wrong about that, but it decided that it was. Well, Your Honor, I respectfully disagree in part to the extent that I don't think that the Supreme Court's holding in Carpenter was that any confidential business information is property. Clearly, the Court used the phrase long recognized as property and then went on at some length to point to precedent of a particular type and to emphasize the fact that the property — the information at issue in that case was the Wall Street Journal's stock and trade, and it was essentially its literary property. It was what its — Right, right, right. So in that case, you have information that is, you know, tantamount to a good, right, that's being sold. So that looks more like property. But we know it doesn't have to be that exactly, because we know misappropriation of confidential information from the client of a law firm would count, right? Well, Your Honor, I think Your Honor is referring to the Grossman decision, and — Yeah. Well, there's Grossman in our court, and there's also this case O'Hagan from the Supreme Court about Rule 10b-5, which has similar language. Well, it actually has different language. And the important thing to recognize is that the question — the main question before the Court in the O'Hagan case was whether under 10b-5, the misappropriation doctrine should be recognized, because there was a question the defendant was arguing that any misappropriation wasn't mentioned.  So I understand that 10b-5 doesn't say for obtaining property, and maybe that's the distinction. That's correct, Your Honor. That's true. But in O'Hagan, on the way to explaining why misappropriation would be a scheme to defraud, the Court cites Carpenter. And we said a company's confidential — the Supreme Court says a company's confidential information of you recognizing Carpenter qualifies as property to which the company has a right of exclusive use. So it did seem like the Court was at least saying that the misappropriation theory was recognizing there was misappropriation of property. But anyway, so what about Grossman? So, like, so there — I mean, I get the idea that in Grossman we said that maintaining the confidentiality had commercial value. Correct, Your Honor. So it doesn't mean that it was the stock in trade, but the confidentiality of it had commercial value. So would that be enough to bring it within the scope of the fraud statute? Maybe — so if the district court had said, you need to find that maintaining the confidentiality of the featured NFT had commercial value to OpenSea, would that have been enough? No, Your Honor. Our position is that under the Supreme Court precedents, including, you know, Cleveland, Kelly, and Simonelli, the government has to prove that the information itself has economic value to the alleged victim. Meaning that the information itself can be traded. Can be sold or traded or — But that's not true of the information in Grossman. So then what do we do about it? Well, I would say two things about Grossman. Number one, there are two ways the Court could look at Grossman. I think the Court could distinguish it and limit it to its facts, which involve the confidential information held by a law firm, which it's charging money to do its services that include keeping the information confidential. But I also think that to the extent the reasoning of Grossman could be viewed as inconsistent with our argument here, that reasoning is superseded by the more recent Supreme Court cases, including Cleveland, Kelly, as well as Blazak, too. Well, I think it's dangerous to draw conclusions from Kelly and Simonelli. Some of the cases involve government entities because the property nature in those cases gets mixed up in with regulatory concerns and other matters. It's an entirely different proposition when you're talking about private individuals or private entities. Property in the hands of the government has certain uses and values to it. And the government may not react to or suffer losses for the use of the information where someone takes proposed regulations with regard to changes in the Medicare regulations or statute and then runs on that information to benefit its trading mechanisms with regard to how that's going to affect industries that are publicly traded. And Kelly's the same thing. Kelly's about the manipulation of the use of several lanes of an exit to send home a political message to somebody. That's not misappropriating property at the government's cost. It's a political maneuver. So I think it's dangerous to try and draw broad conclusions without addressing the fact pattern involved. Why isn't this more like Grossman? I mean, there's economic value to the secrecy of this information because it's consistent. The secrecy of it ensures that then when it's disclosed, the value of the NFT tends to go up. And the business of this company is selling the NFT and it's compensated on a percentage. It gets a percentage of the value. And so to the extent that the NFT goes up in value, the business profits by higher receipts, does it not? Your Honor. Simple question. Does it not benefit? Yes, and it did here. Does it not then benefit by the confidential nature of it because by keeping it a secret, the public doesn't know it? No, Your Honor. In fact, well, if I could, on the record here, there's actually no evidence that the company took steps to keep the information confidential. Well, that's another matter as to what the evidence does or doesn't prove and the conclusions on sufficiency. But I ask you, presume that they did. Presume that we disagree with you about your sufficiency arguments and that it was kept confidential. The jury was asked that, by the way. And they kept it confidential because it related to value. Isn't that enough to show that it's property? I don't think so, Your Honor. And if I could, if you don't mind, I'd like to go back to the remarks Your Honor made about the other Supreme Court cases. I didn't make remarks. I asked you questions. I'm sorry, Your Honor. Thank you very much. Can I talk a little bit about the other Supreme Court cases and why I respectfully disagree with the premise of the question? Although Kelly and Cleveland involved government regulatory information, or Cleveland didn't involve information, the Court's reasoning and analysis showed that its holding was not limited to government actors. So, for instance, take Cleveland. Let's start with Cleveland. Cleveland involved a false statement to obtain a video poker license. And in that case, the government argued that the State could just as easily have been involved in the business of government licensing. And the Court rejected that and said that wasn't the business, it was just regulatory, and that property has to be property in the hands of the victim. In Cleveland Right, and so I guess your position would be that there's no obvious reason why there should be a different test for property or information possessed by the government and information possessed by a business, because the statutory language is the same, right? It's property. Correct. And, indeed, in this Court's decision in Blazak 2, the Court said, while confidential information may constitute property of a commercial entity, such as the publisher, victim, and carpenter, and for which confidential information was it stock and trade to be gathered at the cost of enterprise, organization, skill, labor, and money, and to be distributed and sold to those who would pay money for it? The same is not true for CMS, because the Court is invoking the stock and trade concept and applying it to the government, but also explaining they would apply to a private business. Correctly. And also distinguishing, because in that case, there was no impact on the government's fisc, and that would be a different case. But I wanted to highlight that the Court said confidential business information may constitute property, and that itself also emphasizes that. It doesn't always. Exactly. Okay. So, I mean, let's say we don't agree that the information necessarily has to be the least, there has to be a showing that maintaining the confidentiality information had some kind of economic value to the company. Would that – is it possible that the jury here convicted based on the notion that it was just kind of unseemly and would hurt the company's reputation to trade on this information, but it wouldn't necessarily affect the economics? Absolutely, Your Honor. And indeed, some of the district court's instructions could only have encouraged that type of a finding. Right. So even if it were the case that it's not just that the information has to be the stock and trade, it might be that part of the business model is maintaining confidence in order to protect your profits. We know from the Supreme Court that just policing integrity in business dealings is not sufficient for a theory under the fraud statutes. And so here, if the jury is instructed, you don't need to find that the information has economic value, and you can find that there's fraud if you depart from norms of honesty and fair dealing in business relations. It could be that the jury was deciding that this was a departure from norms of honesty, but didn't necessarily implicate the economic interests of the company. Absolutely, Your Honor. Okay, so that's a problem. But then I guess I would ask this question. So that might suggest that the district court should have instructed the jury differently. But why wouldn't that be harmless? I mean, isn't it obvious that if you undermine the trust of a trading platform, it means that fewer people are going to trade on it, and therefore, you know, the company is going to make less money because it's going to attract less business. So even if the district court should not have said the thing about departing from norms, or that there's just no economic value or commercial value at all, why wouldn't we be able to say, well, it's just obvious that that's what keeping the information confidential was about? Well, Your Honor, and I would like to get to why the information wasn't being kept confidential, but it's clear that a mere reputational, alleged risk to reputation is too illusory to constitute property. So I agree with that, right? So maybe the correct instruction would have been something like a mere harm to reputation is not enough to make the information constitute property. But if, in fact, it would affect the company's fist, then it could qualify. The revelation of the information could affect the company's fist, then it could qualify as property. My question is, why isn't it just obvious from this record that if OpenSea's reputation took a hit and traders trusted it less, they would trade less on it, and their fist would take a hit? Well, in fact, because that's not what happened. What happened was the company only grew a tremendous amount after this, and its market cap went way up. Excuse me. Didn't it make a whole show about firing this guy and new procedures and so on? I don't know if we can make an inference from that. No, Your Honor. And the other point from a legal standpoint is that the Supreme Court has been repeatedly been clear that the object of the scheme has to be to defraud the victim of property. And clearly, Mr. Chastain's object wasn't some kind of reputational harm to the  And so it just doesn't make any sense to say that reputational Well, that's how misappropriation of property works, is you take something that the company has and you use it for your personal use. He didn't want to hurt the reputation of the company. He didn't want to take the private information and appropriate it for his own personal use. The object of the scheme has to be to take property, and this Court has repeatedly held that the defendant's object has to be to cause harm to the victim. And so if you're just talking about reputation, it has to be harm to property. Yeah, but misappropriation of property is a harm to the victim. You're not challenging the idea that if this really were a traditional property interest, the government couldn't proceed under misappropriation theory, right? If it was a traditional property interest. Right. So misappropriation theory, the way it always works is you're taking property of the company and profiting from it personally. Like, your ultimate object is that profit you're getting, right? Like, it's not your object is not to hurt the company, but along the way, you've misappropriated their property, and we understand that to be a harm to the company, right? Well, yes and no. I mean, it depends on the context. And indeed, in the Miller case, for instance, this Court has made clear that the mere fact that the fiduciary profits from a breach of duty is not sufficient to establish a property interest. The property interest has to be separate. So do you think that to fall under the wire fraud statute, Chastain had to be – had, like, the specific intent to hurt OpenSea's reputation? I do, but I don't think the Court needs to reach that question. Our principal argument – Well, before we get there, why would that be? Because this Court has repeatedly held in a line of cases, starting with region office supply, that in a wire fraud scheme, the defendant's intent has to be to harm the victim. So even if he stole, like, actual property from OpenSea and then, you know, sold it on the black market to make money, the fact that he preferred to keep it a secret would mean that he wasn't doing it. I think the jury could – it would be obvious that that inference would be drawn. What inference? The inference that the object of the scheme was to steal the property and thereby cause an economic injury. But he would have preferred that it stay secret, so he didn't really want to hurt the company. He just wanted to profit from the sale of those goods.  But if he stole the goods, then there's – By taking it – by taking it and depriving the company of its property.   Okay. So anyway, I don't think – I'm asking the original question as to whether this is – I think it's not, Your Honor. And I see my time is up. With the Court's indulgence, could I address the confidentiality and one of the other issues? Okay. One last point, sure. Just briefly. You know, I think this case is very different from other cases. And I – there were – the company – the Mahaffey case is very clear that the government has to show that the company took affirmative steps and considered and treated the information as confidential. And here there were no such steps. The only thing the government can point to is this vague, generic template agreement which did not even mention NFTs, was not customized to this company. And the CEO of this tiny company testified that he never thought about whether this information was confidential before the incident. The other co-founder didn't even read the agreement. There were no trainings, no efforts to enforce, no specific policies. And employees routinely bought and sold NFTs on the platform.  I think we have that argument. Okay. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the government. Mr. Roos. Good afternoon. May it please the Court. Nicholas Roos for the United States. I represented the government in the proceeding below and on this appeal. I want to start with a question by Judge Wesley about the nature of the cases upon which the appellant relies, and I want to make two points. Number one, not a single case, there is not a single case in which confidential business information was at issue where the Court imposed a requirement of commercial value, economic value, inherent value, or any sort of value in the hands of a property owner. And second, the language upon which appellant principally relies, the stock and trade language that appears first in Carpenter, is not a basis to impose such a requirement. This Court in Grossman called that very same argument specious. It said it distorts Carpenter. But even Grossman talks about commercial value, right? Grossman says the reason why this is the property interest that's under the ambit of the wire fraud statute is because there was commercial value to the law firm of maintaining the confidentiality of the information. So does that mean that there is a basis in the cases to think about commercial value? Your Honor, I agree with you that Grossman does discuss commercial value, but it does two things. First, it rejects the argument that stock and trade is some sort of component of finding something as property. And then it goes on to say there is commercial value because, of course, the reputational interests of the law firm Cramer Levin in that case. But at the same time, it says even though that the property in question, the confidential business information in question, could not be exploited, that did not render it not property. So that's right. I think they're saying that it doesn't have to be the stock and trade, but it still says that there's commercial value to maintain the confidentiality. So like we have from the Supreme Court these two options, right? The fraud statutes don't reach a theory by which the government seeks to impose its own version of acting with integrity in business relations, like that would be insufficient for conviction under fraud statutes. And it does reach traditional property interests, right? So the question is here are we talking about some version of acting with integrity or are we talking about traditional property interests? And so when I look at the record, I don't know. The jury is instructed that they don't have to say that the information has commercial value. They can determine that there is fraud if you depart from the norms of honesty and fair dealing in business relations. So wouldn't it have been possible for a jury based on those, this record and those instructions to say, I don't know if OpenSea really had any kind of financial stake in maintaining the confidentiality of this information, but it's dishonest in a departure from norms to trade on the featured NFT information. And isn't that a problem? Does that suggest that we are policing integrity and not a property interest? No, Your Honor. And I'd say for two reasons. Number one, Judge Furman in his instructions at appendix page 413 specifically instructed the jury that a violation of workplace rules or norms was not sufficient to find the defendant guilty. And then number two, in answer to your question, Your Honor, the court in Grossman and in others has recognized the reputational interest was something that was worth protecting. I think the two buckets, Your Honor, put the cases in oftentimes are divided not by whether or not something that is business information is confidential or not, but drawing a distinction between confidential business information and governmental information. So in Grossman, there, of course, it's sort of, there is a, in the way you described it, the reputation of the law firm can't be quantified or sold, but for the same reasons you asked at Pallanthurst. Well, it can be quantified, right? I mean, so if you think that the reputation of the law firm, the law firm develops a reputation that they don't keep client confidences, it means they're going to have fewer clients and their, we're using this term fist, their fist will take a hit, right? Well, I totally agree with you. And in the same way. So, but didn't the district court here instruct the jury that you don't need to find that? Because like commercial value is not part of deciding whether the information is confidential business information that is, you know, for the purposes of the fraud statute. You're correct that the district court did not make that a requirement, but no case has. Instead, it just has discussed the fist most recently in Blazak. So if there were a scenario where the information is confidential just because the company has a sort of general reputational interest, but none of the customers would really care. So the fist is not at stake. It's just about acting with integrity in society. And that's why they keep it confidential. And then someone misappropriates that information. You're saying that would still be wire fraud? Well, I would say. Let's say we knew that it didn't implicate the company's fist. So if I understand, if I understand your hypothetical, I think the facts of Grossman are exactly that, which is that you have a law firm, which has a reputational interest related to how it conducts its business, but it did not directly impact. But now you're finding the hypothetical, right? So in Grossman, the court says maintaining the confidentiality of client communications has commercial value to the firm, right? So my hypothetical is what if it didn't? What if we knew that it wouldn't affect the company's fist? They just keep it confidential for appearance's sake or something to that effect? It's not a hypothetical, but it fits the facts here because here there was significant evidence in the trial that it was important to the company, both economically to maintain the confidentiality around this. Both of the founders of the company said that if they... So now you're saying, well, maybe even if the district court should have said there needs to be an economic interest in the information, the error would be harmless. Exactly. That's one of the arguments.  So you're saying that the record shows that they had an economic interest in the information? Absolutely. But are you acknowledging that if, in fact, it did not have an economic interest in the information, it could not be property under the wire fraud statute? No, I don't agree with that. And so why is that? That seems so odd to me because the taking of the information has to cause an injury, does it not? You agree with me? I absolutely agree with you. So how can someone be injured when you take something that's worthless? How could someone be injured? So there has to be some value to it, doesn't there? Well... Let me give you, for instance, an employer decides to keep the names of its employees' spouses and says, we don't really need it for any of our business operations, but we'd like to send a Christmas card to each partner. But we don't want that public, so we're going to keep that confidential. It has nothing to do with the widgets that they make or anything. And someone decides to go ahead and co-opt that information. That's not... That doesn't fit within the statute, does it? It's definitely not wire fraud, Your Honor. But the easy reason why it's not wire fraud is because of what Carpenter says at page 26, which is that it has to be created and maintained by the business in the course of its business operations, and also, of course, there are other elements of wire fraud, such as acting with an intent to defraud or acting or misappropriating in a fraudulent nature. So I agree with you that... You're displaying a disturbing familiarity with Carpenter. Counsel, go ahead. I agree with you, Your Honor, in that in this case, of course, we're talking about NFTs and an exchange of NFTs, but it's not an edge case, because if you change NFTs to stocks, and this was an exchange that bought, that facilitated the buying and selling of stocks, like the NASDAQ, and they featured the stocks on the front page, the NASDAQ did, and there was clear evidence that caused the price to increase or decrease, then we would certainly say this is insider trading. It's sort of well established that it would undermine the market and hurt the company's reputation in a way that would implicate its bottom line. But here, the featured NFT on the website, there's some suggestion that it's just a kind of silly thing they do on the side, and it's kind of orthogonal to their business, and so there is a question as to whether it really is significant enough that it would implicate the company's bottom line, and you seem to be saying, like, yeah, it does have to be that when you misappropriate it, it causes some injury to the company, but you're saying, but they don't have to show that the company was harmed at all economically. Well, I agree with a point that Your Honor made when asking the appellant, which is that here, it's certainly, there is evidence that the exchange was damaged reputationally, and that came from both of the founders at record 230 and 361. Chastain himself acknowledged that this would create a huge conflict of interest that could hurt the company, because people would take them to task if they sold something that they already, or if they featured something they already owned. Yeah, people would take them to task, but we don't know if that would be a kind of effort, sort of general, like, harm to reputation that didn't have, that didn't implicate the company's fist, or really would implicate the company's fist. It really was central to what they were doing, right? Well, that's, I would say, theoretical in the same way in Grossman it was theoretical, in that, that. I mean, the fact that it may be hard to value doesn't mean it's not an expression of value. It's just a question of evaluation and appreciating how to come to Grossman. But damages aren't a part of a guilty verdict. I agree with you, Your Honor. Let's say, let's say the district court did say something along the lines we've been discussing, that the government, to show that it's protected property under the fraud statutes, does have to show that maintaining the confidentiality of the information had economic value to the company. Would you have put on different evidence? It's possible that there could have been additional evidence about the economic, you know, damage as a result of the reputation. But I think there's enough in the record to affirm here, because both of the founders and the defendant all had evidence in some form, both their testimony and then the documentary evidence of the defendant, that this would cause reputational damage and potentially economic damage. I want to step back a second, because you agreed with Judge Wesley that there has to be an injury to the company, right? But then you said to me that there doesn't have to be an economic injury. So what would the injury be in the hypothetical where the information doesn't implicate the company's face? Well, I would say injury for purposes of the wire fraud statute is the deprivation of property. So, of course, in Carpenter, that deprivation comes in the form of when the defendant deprived the Wall Street Journal of its exclusive use of the property. So that's a sufficient injury for purposes of the wire fraud statute.  So you're saying in this case, the company can be deprived of exclusive use of the information, and that's an injury even if losing exclusive use of the information doesn't at all affect the company's bottom line. Well, certainly the extent of the damage is something very different than the misappropriation. One could say the same thing about the Wall Street. But if your theory is the exclusive use is an injury independent of the economic interests of the company, doesn't that look a lot like the right-to-control theory or some kind of intangible thing about how the company is going to operate and how it uses information in general and not actually its property interests? No, because the right-to-control theory had to do with whether the economic information about the decision-making was property. Here, the evidence is pretty clear. But if you're saying there's a hypothetical where there's no economic injury to the information, what does that mean? It just means they're using the information for something in their decision-making, but it doesn't really affect their bottom line, right? Well, in Carpenter and in Mahaffey, the courts in both circumstances said the deprivation of exclusivity is key. And if you think of the facts of each of those cases, in Carpenter, there was no evidence that there was ultimately damage to the bottom line because the info about the third was... But the court has just told us that we can't, you know, focus on these intangible interests. It has to be a traditional property interest.  So isn't what you're saying that it could be the way they use information internally and they're deprived of that, that could be an injury independent of whether they suffer any kind of economic harm? Isn't that inconsistent with what the Supreme Court has just told us? No, because the Supreme Court, both in Carpenter and O'Hagan and others, have said that it does not matter that property is intangible. They've drawn a distinction between business, confidential business information, which, while intangible, has long been recognized as property, and various rights... If it's a traditional property interest, doesn't the confidential business information at least have to have some kind of economic implications for the company? I think that's a consideration that Mahaffey spells out in footnote 14, but it's not something that any court has imposed as a requirement. And I think, by the way, I think that's also clear in terms of the way in which the court evaluates this challenge on appeal. We haven't talked about whether or not it was properly preserved, but I think there's a real question of whether, if you review the record, whether this was actually preserved in the form that appellant would have it for the court's review. And if you look both at the request to charge, the motion of lemonade, and what happened at the charge conference, repeatedly they urged an inherent value test, which is very different than the commercial value test that's being now advocated on appeal. I mean, is it very different? I mean, we're talking about whether there's economic value to the company of the information. Well, I think the difference is in Blazak, too, for instance, the court distinguishing Girard talks about how, in that case, which is the case about the DEA confidential information, there was inherent value to the DEA of the confidentiality of its information, but it couldn't go out and sell it. And it drew a distinction between commercially valuable, as in affecting the FISC, and just inherently valuable. And so in that way, making an objection to that. Yeah, but, you know, but the record, it's not just saying there's inherent value. I mean, they use the word economic all the time, right? Like, there was talk about economic value and commercial value. Certainly. But I think there's a distinction there because it has to do with whether or not something can be bought or sold, sold to the public commercially. And that's... So then, about the Blazak, so why would it be the case that, I mean, we're dealing with the same statutory language, why would it be the case that the nature of property is different if it's held by the government or it's held by a private business? I think going back to the early Supreme Court cases, there's a long history of a business corporate property being treated differently than how a government, which is primarily a regulatory body, treats information or other assets. And I think... So, no, it's true. I mean, I agree, the government has a lot of information that maybe it's not holding for commercial purposes because it has a kind of regulatory or public interest mission, something like that. But it doesn't mean that when you're trying to identify what is property and what is not property, you shouldn't be applying the same definition. Like, why would that definition change based on the identity of the holder of the property? Well, Judge Masci, I disagree with that. I think the Supreme Court and Simonelli and Kelly have actually described reasons why government actors act differently than private corporate property owners. The citation in Blazak 2 to Carpenter was in part to distinguish what was going on in Cleveland and all of the cases about government property. And that is because when it comes to the government, it's primarily regulatory, and there needs to be careful line drawing between when it's acting as basically a commercial entity versus when it's a governmentary in nature. The Court has never imposed sort of... There's no... I mean, in Blazak, there's no injury to the government by Blazak knowing what the regulations were going to be and then front-running on it. There's no real injury to the government. I mean, it is government's information, and I suppose it's proprietary in some way. But the focus in Blazak is really about the regulatory function, not the property function. The question here is the fact that it's confidential and the role that it plays in the business operation of the company involved and whether that's of a property nature or not. Right? Absolutely, Your Honor. And I think that the record here makes clear that it, of course, does affect the property interests of the company, both because the company is taking a commission on all the sales and on fees and has a clear commercial reputational interest in not having the trust and confidence... Wait a minute. You're saying that the mechanism by which it affects the property interests of the company is that if they lose trust, users or traders will not use their platform, and they'll make less fees, right? Correct. But wouldn't it be possible to conclude that the featured NFT information on their website is just such a trivial thing that's orthogonal to their main business that maybe traders just wouldn't care? It's like just an extra feature that they put on their website. Well, Judge Menasche, I believe the record belies that argument. But based on the fact that OpenSea reacted so strongly upon learning this, they immediately issued a press release. They fired the guy. I mean, there is some evidence pointing the other way. There are some people who believed it would affect their fists. But, like, nobody was put to having to prove that it would, right? Well, there was... The district court took off the table the idea that you'd have to show that it had economic implications. Well, I think this would be a different question, which would be whether it has economic injury. But in any event, it would be harmless, because there is ample evidence that it caused reputational damage and damage in the form of both of the founders testifying about how it... One of the founders said this might affect our reputation, right? There isn't actually evidence that the company took a financial hit from it, right? Correct. Okay. Okay. Thank you very much, Mr. Rose. We'll turn back to Ms. Shapiro on rebuttal. Thank you, Your Honor. Just a few points. First, just speaking to that last issue, I just want to call the Court's attention to the fact that the record evidence shows that both of the co-founders testified that this wasn't substantial to their business, it wasn't aligned with OpenSea's main goals as a company, and indeed, Mr. Finzer also admitted it made no difference to the business which NFT chesting selected to feature, and that the only impact... There was evidence pointing in both directions as to whether it might have affected the company's FISC if the information... There was no evidence that it affected the FISC. Well, there was evidence from the founders that they would take a reputational hit, and it does seem like the strong implication or their belief was that it would affect their bottom line. Well, there was no testimony remotely like that, and you notice that Mr. Rose didn't point, Your Honor, to any specific page sites. The record sites I'm talking about around... Does it have to be of no value or can it be of any value? It has to have commercial value in the sense that we've talked about and that Carpenter talks about, and in that regard, I do want to... Well, in any event, I mean, if the jury had been instructed that there needs to be some commercial or economic stake in the confidentiality of the information... That would have been a very different... That would have been a very different trial. Commercial value, what's that? It's something that would be recognized as valuable or of some value to a commercial entity? It has to have value in the sense that it is effectively traditional property. So you're talking about stock and trade... Well, a dollar is traditional property, and a million dollars is traditional property. Which is it? If it costs the business a dollar, is it still... Is that included in the statute? Respectfully, Your Honor, I think that's not the right way... I'm wondering if you're trying to imply that the word substantial should fit in front of it. No, Your Honor. I think what we're talking about is that it has to be the business's stock and trade or a trade secret or literary property, something that has been viewed as property traditionally at common law. So I understand that position, but your position also is that even if it were somewhat less than that, that there needed to be an economic stake in maintaining the confidential information, there still is an error in the... Correct, Your Honor. And in that regard, I would just point out that no one even told Mr. Chastain he should keep this information confidential. No one at the company would have cared if he had announced in advance... So the government says, you know, even if it has to have commercial value, it'd be harmless because the evidence overwhelmingly showed it had commercial value to the company. Your position is what? The jury could have credited the testimony that it didn't really matter. It's just a thing that happened on the website. It wouldn't have economic implications and yet still found him guilty because... Because of the... Because it departed from norms of honesty... And the erroneous constructions on commercial value. And I just wanted to point out that Mr. Rose quoted a part of the instructions on appendix page 413. That was not in the property instruction. That is in the instruction on the second element, which is whether the government had established intent to defraud. So reading just the property instruction, the jury would have been left with the impression that they could just find an existence of a scheme to defraud based on fundamental notions of, you know, dishonesty and against fundamental notions of fair play, and that they were told that this didn't have to have any commercial value to the company. The last thing, I just want to... I understand that my time is up, but I just want to emphasize that we feel very strongly about our argument about the supplemental instruction as well. It's fully briefed. In response to the jury's question. Correct. I think we have that in the paper. That directed a verdict. So we have that argument. Thank you, Mr. Giro. The case is submitted.